## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **THE WIRELESS NETWORK, LLC,** | ) | |
| an Illinois limited liability company, | ) | **Case No. 07-20518** |
| | ) | |
| Debtor/Debtor in Possession. | ) | **Judge Susan Pierson Sonderby** |
| | ) | |

### INTERIM ORDER AUTHORIZING DEBTORS IN POSSESSION TO USE CASH COLLATERAL AND TO OBTAIN POST-PETITION FINANCING PURSUANT TO SECTIONS 105, 361, 363 AND 364 OF THE BANKRUPTCY CODE, PROVIDING ADEQUATE PROTECTION AND GRANTING LIENS, SECURITY INTERESTS, SUPERPRIORITY CLAIMS AND SET-OFF RIGHTS

Upon the motion (the "**Motion**") of the above-captioned debtor and debtor-in-possession (the "**Debtor**") for entry of an interim order (this "**Interim Order**") pursuant to Sections 105, 361, 363 and 364 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") authorizing the Debtor to: (i) use cash collateral of Cellco Partnership and its affiliates, doing business as Verizon Wireless (collectively, "**Verizon**"); (ii) obtain post-petition financing in the form of a secured revolving line of credit up to an aggregate of $900,000.00 (inclusive of all outstanding prepetition and postpetition amounts due to the Debtor from Verizon) in which to purchase inventory from Verizon, pursuant to Section 364 of the Bankruptcy Code, subject to the terms and conditions set forth herein; (iii) grant security interests and other liens and superpriority claims to Verizon (including a priority lien pursuant to Section 364(c)(1) of the Bankruptcy Code, and claims, liens and security interests pursuant to Sections 364(c)(2) and (3) of the Bankruptcy Code); (iv) grant security interests and other liens and superpriority claims in order to provide adequate protection

to and for the benefit of Verizon pursuant to the Verizon Prepetition Liens (as defined herein), and (v) authorizing Verizon, pursuant to Section 553 of the Bankruptcy Code, applicable non-bankruptcy law, and applicable agreements entered into by and between the Debtor and Verizon, to exercise set-off rights, all as more fully set forth herein; and upon the hearing held before this Court on November 20, 2007, wherein the Court heard and considered the statements of counsel appearing at the hearing on the Motion and heard and considered the offer of proof tendered by the Debtor from Jeffrey Svihlik, the Debtor's Chief Executive Officer; and good and sufficient cause appearing therefor,

THE DEBTOR HEREBY STIPULATES AS FOLLOWS:

A.      On November 2, 2007 (the **"Petition Date"**), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the **"Chapter 11 Case"**). The Debtor is now operating its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).  Venue is proper pursuant to 28 U.S.C. §1408.

C.      Pursuant to a loan and security agreement, by and between The Wireless Network, LLC, as borrower, and First United Bank (**"First United"**), First United alleges that it has made certain loans and financial accommodations to the Debtor to, inter alia, fund its operations in an amount of approximately $2.4 million.

D.      Pursuant to that certain Exclusive Authorized Agency Agreement for Commercial Mobile Radio Service (as modified from time to time, including all exhibits and attachments thereto, the **"Verizon Agreement"**), entered into by and between the Debtor and Verizon on

behalf of itself and its affiliates, Verizon appointed the Debtor as an agent authorized directly or

indirectly to market Commercial Mobile Radio Services on behalf of Verizon in the Metropolitan

Statistical Areas, Rural Service Areas, Major Trading Areas and Basic Trading Areas specified in

the Verizon Agreement.  Pursuant to the Verizon Agreement, the Debtor maintains an inventory

of approved models of Authenticabtable Equipment (as defined in the Verizon Agreement) and

spare parts for equipment.  The Debtor acquired this equipment from Verizon on credit terms

outlined in the Verizon Agreement (the "**Verizon Prepetition Indebtedness**").  The approximate

amount of the Verizon Prepetition Indebtedness is approximately $598,000. To secure the

Verizon Prepetition Indebtedness, the Debtor granted to and for the benefit Verizon, a security

interest in the Debtor's inventory and account receivables  (the "**Verizon Prepetition Collateral**"

and such liens shall be referred to herein as the "**Verizon Prepetition Liens**").  Pursuant to the

Verizon Agreement including, but not limited to Section 10 of the Verizon Agreement, the

Debtor also agreed that at any time, any sums for which the Debtor was responsible, as well as

any amount owed to Verizon arising or related to the Verizon Agreement may be offset against

commission amounts and other amounts owed to the Debtor by Verizon (the "**Commission

Payment**") under the Verizon Agreement.

   E.  Pursuant to the Verizon Agreement, the Debtor believes that Verizon has a valid

security interest in and lien on all inventory and account receivables of the Debtor, and that the

proceeds of the same constitute "cash collateral" within the meaning of section 363(a) of the

Bankruptcy Code (the "**Verizon's Cash Collateral**").  Further, the Debtor believes Verizon has

valid set-off rights under Section 553 as to any amounts owed under the Verizon Agreement (the

"**Set-Off Rights**").

F.     The Debtor further believes that (1) the Verizon Prepetition Indebtedness constitutes legal, valid and binding obligations of the Debtor, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from Bankruptcy Code Section 362); (2) Verizon has legally valid Set-Off Rights under Section 553 of the Bankruptcy Code; (3) no defenses, or counterclaims to the Verizon Prepetition Indebtedness exist; and (4) no portion of the Verizon Prepetition Indebtedness is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

G.     Verizon asserts, and the Debtors believe, that the Debtor's inventory and accounts receivable are subject to the Verizon Prepetition Liens. Verizon has objected to any further use of the Verizon Prepetition Collateral, including cash collateral, by the Debtor, except under the terms of this Interim Order.

H.     As a condition precedent to Verizon providing the additional credit as set forth herein, Verizon requires the entry of an order, holding that Verizon has valid prepetition Set-Off Rights under Section 553 of the Bankruptcy Code and authorizing Verizon to immediately set-off against its outstanding Prepetition Indebtedness $300,000 of the approximately $529,000 Commission Payment due from Verizon to the Debtor on or about November 24, 2007 under the terms of the Verizon Agreement. Upon entry of this Order, Verizon will pay to the Debtor via wire transfer the remaining amount of the November Commission Payment. Further, in any given week wherein a Commission Payment is due to the Debtor pursuant to the Budget, Verizon will be entitled to Set-Off that Commission Payment against the amount the Debtor has budgeted to pay Verizon during the same week for inventory purchases.

I.     Verizon, as the post-petition lender, is willing to provide the additional credit contemplated herein, subject to it being allowed to exercise its prepetition Set-Off Rights under

the Verizon Agreement in an amount of $300,000, as well as its post-petition Set-Off Rights, and

further, all subject to the conditions set forth herein and the provisions of this Interim Order

assuring that the Post-Petition Liens and the various claims, superpriority claims and other

protections granted pursuant to this Interim Order as to the interim financing provided by Verizon

hereunder will not be affected by any subsequent reversal or modification of this Interim Order or

any other order, as provided in Section 364(e) of the Bankruptcy Code, which is applicable to the

post-petition financing arrangement contemplated by this Interim Order.  Verizon has acted in

good faith in consenting to and in agreeing to provide the post-petition financing contemplated by

this Interim Order.

     J.     Pursuant to the Bankruptcy Code and in light of the foregoing, the Debtor is

required to provide adequate protection to Verizon against any diminution in value of the Verizon

Prepetition Collateral from and after the Petition Date.  The treatment requested by the Debtor for

Verizon and provided by this Interim Order will minimize disputes and litigation over priming,

use of Verizon's Cash Collateral, and the need to segregate the Verizon Prepetition Collateral and

the proceeds thereof from the "Post-Petition Collateral" (as hereinafter defined) and the proceeds

thereof.

THE COURT HEREBY FINDS:

     K.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.  This is a

core proceeding pursuant to 28 U.S.C. §157(b)(2).  Venue is proper pursuant to 28 U.S.C. §1408.

     L.     An immediate and critical need exists for the Debtor to obtain funds in order to

purchase inventory and thereby, continue the operation of its business.  Without such funds, the

Debtor will not be able to carry on its business during this sensitive period in a manner that will

avoid irreparable harm to the Debtor's estates, creditors, customers and employees.  At this time,

CHI 56855181v4 11/19/2007
     5

the Debtor's ability to continue its operations and the availability of credit to purchase new inventory are vital to the confidence of the Debtor's vendors, landlords and suppliers of other goods and services, to its customers and to the preservation and maintenance of the going concern value of the Debtor's estate. The Debtor is unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 364(a) or (b) of the Bankruptcy Code, unsecured debt having the priority afforded by Section 364(c)(1) or debt secured as described in Sections 364(c)(2) or (3) except as set forth herein.

M.      Good cause has been shown for the entry of this Interim Order. Among other things, entry of this Interim Order will minimize disruption of the Debtor's business and operations and permit it to meet payroll and other operating expenses, obtain needed supplies and retain customer and supplier confidence by demonstrating an ability to maintain normal operations. The interim financing arrangement authorized hereunder is vital to avoid immediate and irreparable harm to the Debtor's estate. Consummation of such financing therefore is in the best interest of the Debtor's estate.

N.      The interim financing and adequate protection arrangements authorized hereunder have been negotiated in good faith and at arm's length among the Debtor and Verizon. The terms of such interim financing and adequate protection arrangements are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration. As such, the Debtor and Verizon are entitled to the protections provided by Section 364(e) of the Bankruptcy Code for any interim financing extended by Verizon under this Interim Order.

O.     Notice of the interim hearing on the Motion and this Interim Order has been provided (by hand, telecopy, overnight mail or courier) to counsel for Verizon, the United States Trustee, any additional parties asserting liens against the Debtor's assets, and the official committee of unsecured creditors (the "**Committee**").   In view of the urgency of the relief requested, such notice constitutes sufficient notice under Bankruptcy Rule 4001 and no other notice need be given.

THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.     The Debtor be, and hereby is, authorized enter into a line of credit pursuant to the terms of this Interim Order (the "**Post-Petition Credit**") and perform its obligations hereunder, solely in accordance with, and subject to, the terms of this Interim Order, for the purposes of acquiring inventory pursuant to the budget attached hereto as Exhibit A (as may be supplemented from time to time, the "**Budget**").[1]  Until the occurrence of a Termination Event, the Debtor shall be authorized to use credit pursuant to this Interim Order: (a) as long as the Debtor is in compliance with the Budget (after taking the "Variance" (hereinafter defined) into account), and (b) until total amount of credit, including all outstanding prepetition and postpetition amounts owed to Verizon, reaches an aggregate amount of $900,000 (the "**Credit Limit**").   The determination of compliance with the Budget shall be made on a week-ending basis for each week until the occurrence of a Termination Event (hereinafter defined).   Notwithstanding the foregoing, the Debtor shall be deemed to be in compliance with the Budget so long as its cash disbursements by line item, on a weekly basis, are less than 110% of the amount provided for in the Budget for that line item for each respective week and so long as its revenue and sales, on a weekly basis, are more than ninety percent (90%) of the amounts provided for in the Budget for

---

[1]     To the extent anything in this Interim Order is contrary to the Budget,  this Interim Order is controlling.

each respective week (collectively, the **"Variance"**). The Debtor is authorized to enter into such non-material modifications and amendments to the Budget without further Court order as may be agreed upon in writing by the Debtor and Verizon. Notwithstanding any other provision of this Interim Order, Verizon shall not have any obligation or commitment to provide Post-Petition Credit pursuant to this Interim Order until the conditions precedent provided for herein have been satisfied.

2.      Upon entry of this order, Verizon shall be entitled to immediately apply its Set-Off Rights pursuant to Section 553 of the Bankruptcy Code to (i) set-off $300,000 of the November Commission Payment against any prepetition amounts outstanding to Verizon under the Verizon Agreement and (ii) in any given week, notwithstanding the 60 day payment terms, Verizon may set-off any additional post-petition Commission Payments against that week's budgeted payment to Verizon (as reflected in the Budget attached hereto) on account of the outstanding Post-Petition Credit. Verizon shall remit to the Debtor via wire transfer any amounts of the Commission Payments remaining after applying its Set-Off Rights as described herein.

3.      From and after the date of this Interim Order (the **"Effective Date"**) until: (a) the indefeasible payment in full in cash of the Post-Petition Credit; and (b) the termination of any commitments or obligations under this Interim Order, the Debtor is hereby authorized and directed to remit, and shall remit to Verizon payments, as set forth in the Budget, this Interim Order and the Verizon Agreement.

4.      Any and all payments or proceeds remitted to Verizon pursuant to this Interim Order (or any similar provisions of the Verizon Agreement) shall be received by Verizon free and clear of any claim, charge, interest, assessment or other liability, all of which are waived by the Debtor or other parties in interest; provided, that nothing in this Interim Order shall be deemed to

preclude any such claim or charge arising out of or based on section 506(c) of the Bankruptcy Code, except as provided in this paragraph 4; and provided, further, that Verizon reserves any rights it has to propose to include a blanket waiver of section 506(c) claims and charges as part of a final order (the **"Final Order"**) approving the Post-Petition Credit.

5.      As security for the Post-Petition Credit and all other loans, advances and any other indebtedness or obligations, contingent or absolute, which may now or from time to time hereafter be owing by the Debtor to Verizon, Verizon is hereby granted valid, binding, enforceable and perfected liens (the **"Post-Petition Liens"**) in all currently-owned or hereafter-acquired property and assets of the Debtor of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising, and all proceeds, products, rents and profits thereof, including, without limitation, all cash, goods, accounts, inventory, cash-in-advance deposits, general intangibles, deposit accounts, real estate, machinery, equipment, vehicles, trademarks, trade names, licenses, claims and causes of action (excluding actions under Sections 544, 547, 548, 549 550 and 553 of the Bankruptcy Code), rights to payment including tax refund claims, insurance proceeds, and tort claims, and the proceeds, products, rents and profits of all of the foregoing (the **"Post-Petition Collateral"**). Notwithstanding anything in this Interim Order to the contrary, Verizon's Post-Petition Liens shall be senior to any and all liens granted by or imposed upon the Debtor with respect to the Debtor's assets acquired by the Debtor post-petition, including but not limited to, accounts receivable and commissions which arise and/or accrue post-petition and inventory acquired position. Otherwise, this Interim Order shall not disturb the priority of the prepetition security interests in the Debtor's prepetition collateral.

6.      As adequate protection related to the use of Verizon's Prepetition Collateral, as well as its Cash Collateral, Verizon is hereby granted valid, binding, enforceable and perfected liens (the "**Adequate Protection Liens**") in all Post-Petition Collateral to secure an amount of Verizon Prepetition Indebtedness (the "**Adequate Protection Obligations**") equal to the sum of the aggregate amount of diminution in value of the Verizon Prepetition Collateral and use of Cash Collateral, whether by depreciation, use, sale, loss decline in market price, or otherwise.  The Adequate Protection Liens are subject only to the Post-Petition Liens.

7.      Except as expressly set forth in this Interim Order: (y) the liens and security interests granted in this Interim Order to secure the Post-Petition Credit shall not be subject to any lien which is avoided and preserved for the benefit of the Debtor's estate under Section 551 of the Bankruptcy Code; and (z) the liens and security interests granted in this Interim Order shall not be subordinated to or made pair passu with any other lien under Section 364(d) of the Bankruptcy Code or otherwise.

8.      In addition, (a) the Post-Petition Credit shall have priority in accordance with the provisions of Section 364(c)(1) of the Bankruptcy Code over all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code ("**Superpriority**"), and (b) the Adequate Protection Obligations shall have Superpriority.  No costs or administrative expenses that have been or may be incurred in the Debtor's Chapter 11 Case, in any conversion of the Debtor's Chapter 11 Case to a proceeding pursuant to Chapter 7 of the Bankruptcy Code, or in any other proceeding related thereto, and no priority claims, including, without limitation, any other Superpriority claims, are or will be prior to or on a parity with the claims of Verizon against the Debtor arising or related to, as applicable, the Post-Petition Credit or Adequate Protection

Obligations or any provision of this Interim Order or with the liens and security interests granted herein on, in and to the Post-Petition Collateral.

9.      Upon issuance of a Termination Notice (as set forth in Paragraph 12) by Verizon, the Post-Petition Credit shall become due and payable, without further demand. Unless all Post-Petition Credit is paid in full, from and after the Termination Date, the Debtor shall have no authority to use the Verizon Prepetition Collateral (including Verizon's Cash Collateral) or Post-Petition Collateral.

10.     From and after the Effective Date, the Post-Petition Credit, the Verizon Prepetition Collateral, and the Post-Petition Collateral shall not, directly or indirectly, be used to pay expenses of the Debtor or otherwise disbursed except for those expenses, payments, and/or disbursements that are expressly set forth in the Budget or otherwise permitted under this Interim Order; provided however, that the foregoing shall not be construed as consent to the allowance of any of the amounts and shall not affect the right of Verizon to object to the allowance and payment of such amounts. No consent by Verizon to any administrative claims, including fees and expenses of professionals, sought to be assessed against or attributed to Verizon or its interests in the Verizon Prepetition Collateral or the Post-Petition Collateral pursuant to the provisions of Section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtor, shall be implied from any action, inaction or acquiescence by Verizon or otherwise. Except as set forth in the first sentence of this Paragraph 10, Verizon has not consented or agreed to the use of the Post-Petition Credit, Verizon Prepetition Collateral or the Post-Petition Collateral.

11.     The automatic stay under Bankruptcy Code Section 362(a) shall be, and it hereby is, modified to the extent necessary to permit Verizon to retrieve, collect and apply payments and

proceeds in respect to the Verizon Prepetition Collateral and the Post-Petition Collateral in accordance with the terms and provisions of this Interim Order.

12.    Notwithstanding anything herein, if Verizon issues a notice of termination due to the occurrence of a Termination Event (a **"Termination Notice"**), which may be transmitted via email, facsimile or overnight delivery, to the Debtor, the Office of the United States Trustee and the Committee, the Debtor shall no longer, pursuant to this Interim Order or otherwise, be authorized to use credit hereunder or to use Verizon's Cash Collateral (and any obligation of Verizon to extend credit hereunder shall be terminated). For purposes of this Interim Order, a Termination Event shall include any of the following events (any such event shall be referred to as a **"Termination Event"** and the date of any such event for which there is a Termination Notice shall be referred to as the **"Termination Date"**):

(a)    Any event, as set forth in Section 9.1 of the Verizon Agreement, hereinafter an Event of Default, after taking into account applicable cure periods;

(b)    The Verizon Agreement is terminated, rejected, or materially breached as determined by Verizon in its reasonable discretion;

(c)    Any challenge to Verizon's prepetition or postpetition Set-Off Rights;

(d)    Any adversary proceeding challenging the Verizon Prepetition Indebtedness as set forth in Paragraph 16 below;

(e)    The Court fails to enter a final order approving the Motion and Post-Petition Credit by December 11, 2007, or such other date by agreement of Verizon, the Debtor and the Committee;

(f)    The total amount of the Post-Petition Credit exceeds the Credit Limit;

(g)     The Debtor's failure to comply with the terms and conditions of this Interim Order (including, without limitation, the Debtor's failure to comply with the Budget, subject to the Variance).

(h)     The Maturity Date (as hereinafter defined).

(i)     All obligations and commitments of Verizon hereunder shall terminate at the earliest of the following (the "Maturity Date"): (a) January 31, 2008; (b) the entry of an order pursuant to Section 363 of the Bankruptcy Code approving the sale of substantially all of the Debtor's assets; (c) the effective date of any plan of reorganization; (d) conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; (e) appointment of a trustee or examiner in the Chapter 11 Case; or (f) dismissal of the Chapter 11 Case.

13.     Upon the receipt of a Termination Notice, the Debtor or the Committee shall have three (3) business days within which to have an emergency motion heard by the Bankruptcy Court solely to determine if a Termination Event occurred.

14.     Three (3) business days after the issuance of a Termination Notice by Verizon and provided the Court has not entered an order staying Verizon's rights hereunder pursuant to a motion filed by the Debtor as described in paragraph 13 above, Verizon shall have the right, without further order of court or notice to the Debtor, to exercise the rights granted it hereunder as to all or such part of the Verizon Prepetition Collateral or Post-Petition Collateral, in its sole discretion, shall elect, including the right to take possession of and sell the Verizon Prepetition Collateral or Post-Petition Collateral in accordance with the terms of the Uniform Commercial Code to satisfy the Verizon Prepetition Indebtedness and the Post-Petition Credit.   For such

purpose, the automatic stay of Section 362 of the Bankruptcy Code is hereby modified and vacated as against Verizon.

15.     Notwithstanding the occurrence of the Termination Date or anything herein to the contrary, all of the rights, remedies, benefits and protections provided to Verizon under this Interim Order shall survive the Termination Date.  Upon the Termination Date, the principal of and accrued interest and fees and all secured claims owed to Verizon hereunder or under the Verizon Agreement shall be immediately due and payable and Verizon shall have all other rights and remedies provided in the Verizon Agreement and this Interim Order.  Notwithstanding anything herein, no amounts under the proceeds of the Post-Petition Credit, or the proceeds of the Verizon Prepetition Collateral or the Post-Petition Collateral shall be used for the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the Verizon Prepetition Indebtedness or any liens or security interests with respect thereto, any right of Set-Off, or any other rights or interest of Verizon or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code against Verizon; (b) preventing, hindering, or delaying Verizon's enforcement or realization upon any of the Post-Petition Collateral; (c) using Verizon's Cash Collateral except as specifically permitted in this Interim Order or by order of the Bankruptcy Court; (d) incurring indebtedness except as permitted by this Interim Order; or (e) modifying Verizon's rights hereunder.

16.     The stipulations and findings contained in paragraphs E, F, G, H, I M and N above, and the repayment of the Verizon Prepetition Indebtedness contemplated by paragraphs 2 and 3 above, shall be binding upon all parties in interest, including without limitation, the Debtor and the Committee, unless: (a) a party in interest with standing (the Committee is deemed to have

standing under this provision) to do so has filed an adversary proceeding (which adversary proceeding shall be subject to the limitation set forth in the last sentence of decretal paragraph 15) challenging the amount, validity, enforceability, perfection or priority of the Verizon Prepetition Indebtedness or the Verizon Prepetition Liens on the Verizon Prepetition Collateral in respect thereof, or otherwise asserting any claims or causes of action against Verizon on behalf of the Debtor's estate, no later than the date that is sixty (60) days after the date of this Interim Order, which may be extended by the agreement of both Verizon and the Committee (the "**Investigation Period**") with respect to any challenge relating to the Verizon Prepetition Indebtedness or the Verizon Prepetition Liens on the Verizon Prepetition Collateral, or otherwise relating to any claims or causes of action against Verizon; and (b) the Court rules in favor of the plaintiff in any such timely filed adversary proceeding and such ruling becomes a final order.  If no such adversary proceeding is commenced during the Investigation Period, (a) the repayment of the Verizon Prepetition Indebtedness shall be deemed final and indefeasible, not subject to subordination and otherwise unavoidable, (b) the Verizon Prepetition Indebtedness shall constitute allowed claims, not subject to subordination and otherwise unavoidable, for all purposes in the Chapter 11 Case and any subsequent Chapter 7 case, (c) the Verizon Prepetition Liens on the Verizon Prepetition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and (d) Verizon, the Verizon Prepetition Indebtedness, the Verizon Agreement and Verizon's Prepetition Liens on the Verizon Prepetition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including without limitation, any successor thereto. Subject only to the foregoing provisions of this paragraph 16, Verizon shall be deemed released of all claims, rights, causes of action or defenses

by, and all liabilities owing to, the Debtor, the Committee, all of the Debtor's creditors, and any subsequently appointed trustee arising out of or based on any facts or circumstances occurring prior to the date hereof.

17.     If it shall be necessary for Verizon, at any time, to exercise its rights and remedies hereunder or under applicable law in order to effect repayment of the Post-Petition Credit or the Adequate Protection Obligations, or to receive any amounts or remittances due hereunder, including without limitation, foreclosing upon and selling all or a portion of the Verizon Prepetition Collateral or the Post-Petition Collateral, Verizon shall, unless an order has been entered by the Court to the contrary within the three (3) day Termination Notice period provided in Paragraph 12, have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Verizon Prepetition Collateral and the Post-Petition Collateral as Verizon shall, in its sole discretion, elect. Verizon shall be entitled to apply the payments or proceeds of the Verizon Prepetition Collateral and the Post-Petition Collateral in accordance with the provisions of this Interim Order, and in no event shall Verizon be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Verizon Prepetition Collateral or Post-Petition Collateral or otherwise.

18.     Except as provided herein, the Debtor shall be enjoined and prohibited from at any time during the Chapter 11 Case granting liens on and security interests in the Verizon Prepetition Collateral, the Post-Petition Collateral or any portion thereof to any other parties pursuant to Section 364 of the Bankruptcy Code or otherwise, which liens and security interests, as the case may be, are senior, or on a parity with the liens and security interests of Verizon therein. Except in accordance with the terms of this Interim Order, the Debtor shall be enjoined and prohibited from at any time: (a) using Verizon's Cash Collateral, (b) using the Post-Petition Collateral, and

(c) applying to the Bankruptcy Court for an order authorizing the use of Verizon's Cash Collateral.

19.     The Debtor shall execute and deliver to Verizon all such agreements, financing statements, instruments and other documents as Verizon may reasonably request to evidence, confirm, validate or perfect the liens and security interests granted pursuant hereto.  Further, the Debtor shall provide Verizon and the Committee the following: (i) by close of business every Friday, a report of the actual income and expenses as compared to the Budget for the previous week, and (ii) ten days prior to the first day of the next month, the monthly budget for that month.

20.     The Debtor shall permit representatives, agents and/or employees of Verizon upon reasonable notice to have reasonable access to its premises and its records during normal business hours (without unreasonable interference with the proper operation of the Debtor's businesses) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

21.     The Post-Petition Liens and all other liens and security interests granted herein shall, pursuant to this Interim Order, be, and they hereby are, deemed perfected, and no further notice, filing or other act shall be required to effect such perfection; provided, however, if Verizon, in its sole discretion, chooses to file such mortgages, financing statements, notices of liens and security interests and other similar documents, all such mortgages, financing statements or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order, and the automatic stay of Section 362 of the Bankruptcy Code is hereby vacated to effect such filings.

22.     In making decisions to advance moneys or extend financial accommodations of any nature under this Interim Order or the Verizon Agreement, in administering the Debtor's use

of Verizon's Cash Collateral or any advances, loans, or financial accommodations of any sort under this Interim Order or the Verizon Agreement, or in taking any other action related to or in connection with any of the foregoing, Verizon shall have no liability to any third party, and shall not be deemed to be in control of the operations of the Debtor, an "employer" of any of the Debtor's employees, or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtor.

23.     The provisions of this Interim Order shall be binding upon and inure to the benefit of Verizon, the Debtor and its respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor).

24.     Based on the findings set forth in this Interim Order and in accordance with Section 364(c) of the Bankruptcy Code, which is applicable to the post-petition financing arrangement contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity and enforceability of Verizon's Set-Off Rights or any lien, security interest or priority authorized or created hereby but only insofar as such rights or interests concern the interim financing granted by Verizon hereunder.   Notwithstanding any such modification, amendment or vacation, any claim for interim financing granted to Verizon hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Interim Order, and Verizon shall be entitled to all of the rights, remedies, privileges and benefits, including its Set-Off Rights and the liens and priorities granted herein, with respect to any such claim.

CHI 56855181v4 11/19/2007                                18

25.     The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, mortgages and financing statements) that may be required or necessary for the Debtor's performance hereunder, including, without limitation the execution of any post-petition financing documents.

26.     The Debtor shall, on or before November 29, 2007, serve by United States mail, first class postage prepaid, copies of the Motion, this Interim Order, the proposed Final Order and a notice of the hearing (the "Final Hearing Notice") to be held on December 11, 2007 at 10:30 a.m. (central time) to consider entry of the proposed Final Order on: (a) counsel for the Committee; (b) the Office of the United States Trustee; (c) counsel for Verizon; (d) all parties known to the Debtor to have liens on or security interests in any of the Debtor's assets; (e) all parties known to the Debtor as potentially subject to the waiver of claims under section 506(c) of the Bankruptcy Code, as set forth in paragraph 4 hereof; (f) the Internal Revenue Service; and (g) all parties who have timely filed requests for notice under Bankruptcy Rule 2002. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the United States Bankruptcy Court Clerk for the Northern District of Illinois no later than 4 p.m. (central time) on December 7, 2007, which objections shall be served so that the same are received on or before such date by:

(a)     David K. Welch, Crane, Hayman, Simon, Welch & Clar, 135 S. LaSalle St, Suite 3705, Chicago, Illinois 60603, counsel for the Debtors;

(b)     Matthew Gensburg and Sherri Morissette, Greenberg Traurig, LLP, 77 W. Wacker Drive, Suite 2400, Chicago, Illinois 60601, counsel for Verizon;

(c)     James B. Sowka, Office of the United States Trustee, 227 W. Monroe St., Suite 3350, Chicago, IL 60606; and

(d)     Aaron L. Hammer and Thomas R. Fawkes, Freeborn & Peters, LLP, 311 South Wacker Drive, Suite 3000, Chicago, Illinois 60606, counsel to the Committee.

27.     Notwithstanding anything to the contrary herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, (a) any of the rights of Verizon under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of Verizon to (i) execute its Set-Off Rights; (ii) request additional adequate protection of its interests in the Verizon Prepetition Collateral or the Post-Petition Collateral or relief from or modification of the automatic stay extant under Section 362 of the Bankruptcy Code, (iii) request conversion of the Chapter 11 Case to Chapter 7, and (iv) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of Verizon.

28.     This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof. There is no just reason to delay enforcement or appeal of this Interim Order.

Dated: November 20, 2007.

ENTERED:

UNITED STATES BANKRUPTCY JUDGE

## The Wireless Network, LLC - Consolidated
Cash Receipts & Disbursements - Income Tax Basis

| | Nov 18 - 24 | Nov 25 - Dec 1 | Dec 2 - 8 | Dec 9 - 15 |
|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | |
| **Income** | | | | |
| Commission revenue | 565,000.00 | 0.00 | 0.00 | 0.00 |
| Gross Sales | 116,000.00 | 115,000.00 | 115,000.00 | 115,000.00 |
| Holiday Sales | 0.00 | 11,500.00 | 11,500.00 | 11,500.00 |
| **Total Income** | 680,000.00 | 126,500.00 | 126,500.00 | 126,500.00 |
| | | | | |
| Verizon Reimburse - Bill Payments | 18,750.00 | 18,750.00 | 18,750.00 | 18,750.00 |
| Payments for Inventory | 300,000.00 | 40,000.00 | 40,000.00 | 40,000.00 |
| | 318,750.00 | 58,750.00 | 58,750.00 | 58,750.00 |
| | | | | |
| **Gross Profit** | 361,250.00 | 67,750.00 | 67,750.00 | 67,750.00 |
| **Expense** | | | | |
| Advertising | 0.00 | 0.00 | 0.00 | 0.00 |
| Bank Service Charges | 0.00 | 1,500.00 | 0.00 | 1,260.00 |
| Car Allowance - Regional Mgr | 0.00 | 0.00 | 238.59 | 0.00 |
| Cash over/short | 0.00 | 1,500.00 | 0.00 | 0.00 |
| Commission expense | 0.00 | 65,165.00 | 0.00 | 600.00 |
| Contract Labor | 0.00 | 2,250.00 | 0.00 | 2,250.00 |
| Equipment rental | 0.00 | 665.00 | 0.00 | 0.00 |
| Interest Expense | 0.00 | 0.00 | 0.00 | 1,006.00 |
| Insurance | 0.00 | (925.00) | 0.00 | 0.00 |
| Merchant Fees | 0.00 | 8,215.00 | 0.00 | 0.00 |
| Mileage reimbursements | 525.00 | 625.00 | 625.00 | 625.00 |
| New store buildout | 12,000.00 | 0.00 | 0.00 | 0.00 |
| Office Expenses | 1,820.00 | 6,830.00 | 1,500.00 | 1,920.00 |
| Payroll Expenses | 0.00 | 87,210.00 | 2,750.00 | 94,770.00 |
| Payroll Fees | 0.00 | 855.00 | 0.00 | 520.00 |
| Rent | 0.00 | 140,543.00 | 0.00 | 9,800.00 |
| Repairs | 475.00 | 1,700.00 | 0.00 | 0.00 |
| Taxes | 0.00 | 17,032.00 | 0.00 | 10,265.00 |
| Telephone | 6,235.00 | 3,300.00 | 300.00 | 600.00 |
| Utilities | 8,380.00 | 2,200.00 | 900.00 | 4,340.00 |
| | | | | |
| **Total Expense** | 29,335.00 | 339,171.00 | 6,313.59 | 127,946.00 |
| | | | | |
| **Net Ordinary Income (Loss)** | 331,915.00 | (271,421.00) | 61,436.41 | (60,196.00) |
| | | | | |
| Beginning Cash | 75,000.00 | 406,915.00 | 135,494.00 | 196,930.41 |
| Cash In (Collections/Deposits) | 680,000.00 | 126,500.00 | 126,500.00 | 126,500.00 |
| Cash Out (Expenses) | 348,085.00 | 397,921.00 | 65,063.59 | 136,734.41 |
| Ending Cash | 406,915.00 | 135,494.00 | 196,930.41 | 186,696.00 |
| | | | | |
| Beginning Verizon Receivables | 903,325.00 | 523,490.00 | 689,390.00 | 843,145.00 |
| Plus: Sales | 185,165.00 | 165,900.00 | 153,755.00 | 164,290.00 |
| Less: Collections | 565,000.00 | 0.00 | 0.00 | 0.00 |
| Ending Verizon Receivables | 523,490.00 | 689,390.00 | 843,145.00 | 1,007,435.00 |
| | | | | |
| Beginning Inventory | 570,000.00 | 570,000.00 | 570,000.00 | 570,000.00 |
| Plus: Purchases | 162,000.00 | 205,000.00 | 205,000.00 | 205,000.00 |
| Less: Sales of Inventory | 162,000.00 | 205,000.00 | 205,000.00 | 205,000.00 |
| Ending Inventory | 570,000.00 | 570,000.00 | 570,000.00 | 570,000.00 |

Note:    To the extent additional inventory is required to open additional locations, or if sales increase, additional inventory is to be funded by additional credit from Verizon or additional funding to be obtained with court approval.